Please all rise. Hear ye, hear ye, hear ye. This honorable appellate court of the Second Judicial District is now back in session and will be served by the two German. The honorable citizen F. Hutchinson presides. Please be seated. Your honors, this case in regard to suit B-15-0552, people in the state of Illinois, plaintiff's appellate, the boy in the costume, defendant's appellate. I hereby pass the plaintiff's comment to Mr. Mark A. Rimondi. I hereby make up the plaintiff's appellate from Mr. Carl Steiner. Good afternoon now. I apologize for the delay. We've been doing this for some time this morning. We had some discussions. But we are here now and we are ready to hear your arguments. So Mr. Rimondi, if you are ready. Yes. Good morning. Good afternoon. I guess. Well, first of all, I appreciate the honor and I'm grateful to be here arguing on behalf of my client, Floyd Hoskins. I didn't represent him in the trial court, but I represent him obviously on appeal. The first thing I want the court to know is that this was tried before jury. Mr. Hoskins availed himself of probably the most fundamental right in our criminal justice system, which was to decide with his lawyer to have the prior effect, the jury of 12 citizens, rather than have a bench trial before Judge Klingman, who was the trial judge. So that's the first thing I want to impress on this court. And I don't want to oversimplify the case, but it all stems from that principal right that the defendant availed himself of is the right to a jury trial. As the court, I'm sure, knows the jury in this particular case and under our system of laws acted and was responsible to try the facts. I don't know what discussions Mr. Hoskins had with his counsel, what his strategy was, but he elected to avail himself of that constitutional right. And in fact, the jury trial was impaneled. Procedurally, Mr. Hoskins' trial attorney filed an answer in the criminal case, gave notice to the state that he intended to avail himself of a defense, and that defense was the defense of parental discipline, which I think is fair to say it doesn't appear in the criminal code, but it's in the nature of an affirmative defense that derives from our common law and clearly is recognized here in the state of Illinois. So he gave- I'm sorry, go ahead. Yeah, and procedurally he gave the state notice that he was going to do that. And the record is replete procedurally and by way of argument to the jury and by way of argument to the court that this was the defense, that this was the theory of defense, which a defendant is entitled to employ, that the defendant is entitled to present a defense or to argue a theory of defense. And that theory of defense in this particular case was that the trier of facts should consider whether what he did was reasonable or not reasonable. And simply put, and with all due respect to Judge Kleeman, what the trial court did here was impinge on the jury, on the province of the jury. So counsel, I had a question then. You cite the Roberts case in discussing the jury instructions as well as many more at page 21 of your brief. But this case is really not like the Roberts case where it was held to be error not to instruct the jury on parental discipline. In that in Roberts, there were conflicting accounts of what occurred. Here, really, there wasn't any conflict on the essence of what happened. That is that the defendant picked up AF by the neck and held him up for a period of time. So really, what the trial judge did here was different than in Roberts, because here he found there wasn't any evidence at all. Any evidence, however slight, to support giving this jury instruction. Isn't that correct? I respectfully disagree. Okay, explain why. I've seen the court with regard to the first part of the argument comparing the facts in Roberts to the facts in the case here before the court. I would argue that respectfully, the court's and your Honor's interpretation of Roberts argues in favor of Floyd Hoskins. The conflict in testimony, if the court recalls, the conflict was that the defendant in that case, he denied having any physical contact at all. And he still chose to avail himself of, ask the court to instruct the jury on parental discipline. So that, in that particular case, and I don't know if I'm perhaps not smart enough to understand, but I thought that the court there and the appellate court there could have more easily ruled that that defendant was not entitled to such an instruction when, in fact, he's denying to the court and he's denying to the prior effect the fact that there was any contact at all. So he's denying any kind of contact. Ipso facto, he's denying any sort of parental discipline. Yet he asked the trial court to instruct the jury on parental discipline. I find that, and again, I don't want to use the politically incorrect term, but I find that a bit schizophrenic in that particular case. In this particular case, true, there was no conflict as to what the facts were. But addressing the facts and moving on to Your Honor's question regarding this particular case, the facts were undisputed as to what the contact was. And then if we look and move beyond the Roberts case to the Green case, which was a ruling by this court, the Green case makes clear, again, that it's not up to the judge unless he's acting as the prior effect. And in Green, the trial, the judge was the prior effect. And I think that's very important. I want to emphasize that, at least. I think that's very important to remember when deciding this case. So in that particular case, the judge was fully within his rights, fully within his constitutional authority to determine whether the defendant's actions were reasonable and whether they were reasonable within the parental discipline defense. But when there's a jury trial, the law is clear, and at least the way I read it in Green, there's much made of, in that case, of three concepts. Perhaps it's two, but I think it's three. One is the fact that the prior effect is responsible for deciding whether the acts were reasonable or not. Again, with all due respect to Judge Kleeman, he prevented the jury from having that ability. He prevented the jury from deciding whether Mr. Hoskins's acts were reasonable or unreasonable, no matter what we, four or five, six of us may think. Because he focused on the nature of the act itself and determined that it wasn't parental discipline, correct? Correct. That's correct. Forget about the reasonableness of the type of discipline. Correct. So that's a difference. It is, but he was, in my opinion, and based on the law, that was not his decision to make. The law, respectfully, the law requires that if some evidence is presented to substantiate an affirmative defense, if that evidence is presented, whether it be presented by the state or the defense, that's what triggers the right to have the instruction and the prior effect be instructed so that they can apply the facts and the law to the facts. So if he had, I mean, I'm taking the extreme, if he had, or let's say a person in this situation had taken a knife and stabbed the AF to stop it, are you saying that this judge should have also sent that to the jury? No. Okay, so where do we draw the line? I think we draw the line within the ambit of the proceedings. And the proceedings are made up in civil courts by a complaint, in a criminal court by an indictment. In this particular case, the painting, the ambit of the proceedings, was that the state chose to charge Mr. Hoskins with two counts. And those two counts, they chose not to charge him with choking AF Anthony. So specifically, I think the court can make a reasonable inference that the state, who knows their evidence best, they know their complaining witness, they've looked at the police reports, they've spoken to their witnesses. They made a reasoned decision not to charge Mr. Hoskins with choking. Had he been charged with choking, I think my argument would be considerably weaker. But within the ambit of the indictment, of the charge against him, and within the ambit, more particularly, of the facts that were presented at trial. And there was a lot going on around Mr. Hoskins' placing of his hands around this young boy's neck. And I know that the admonishment I got in the mail said not to argue the facts too much. But just briefly, the facts were that he was acting in loco parentis. He was living with the mother of this child. They had another child together, and there was another young boy in the house. It was actually the evidence presented by the state that showed that the young boy, the complaining witness, Anthony in this case, 13 years old, was hitting his brother with some sort of a paddle, a badminton paddle. Mr. Hoskins, acting as dad or stepdad, intervened, told him to stop. Put his hand between him and the boy. The boy then hit Mr. Hoskins. And Mr. Hoskins grabbed the boy by the neck and put him in his room. Whether that's reasonable or not is a question for the jury. Respectfully to Judge Clemon and I, I could, I might sympathize with Judge Clemon's sentiments on this case and with your Honor's sentiments. There are borders to what a person can do. But the law, again, citing Greene, is clear that it is the full responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, to draw reasonable inferences from basic facts, and then arrive at ultimate facts. Where you have unrebutted testimony that the boy says he couldn't breathe or talk. The fact that he couldn't breathe, doesn't that take it out of the reasonableness realm? It may. As a matter of law? No. I respectfully disagree. As a matter of law, if it does take it out of the ambit of reasonableness, it's up to the jury to decide that. Aren't there some acts that are just so extreme, though, that as a matter of law, you can say that's not reasonable? Such as? A person not being able to breathe. Or what if he had taken the kid by the ears, grabbed him by the ears, and picked him up by the ears and moved him? Does that take it out of the reasonableness as a matter of law? As a father of three kids, I think everything we're discussing here is unreasonable. I don't know that I would be able to look at myself in the mirror after pulling my son by his ears or grabbing him by the neck. But in a court of law, I guess what Your Honor is asking me to do is to concede that this court should make a per se rule now and take away from our jury system, from our peers, the ability for them to decide and to have the trial court substitute its judgment on cases based on what are very reasonable questions by Your Honor and Your Honor. But in these particular cases, up until now, the law in this circuit, in the appellate court, and I know we have one appellate court in the law in Illinois, I'm not aware of any case that has gone to a jury trial where some evidence is presented showing that the parental discipline defense should be, the instruction should be given to the jury, that not giving it to the jury is not an abuse of discretion. As I read the judge's comments when he's talking about the jury instruction, what impresses me here is it sounds like almost a post-trial motion, that he is saying no rational trier of fact could have found that to be reasonable. And if they did, for some reason, and I think that's what, but if that happened, that's the jury's call. But if it happened, I believe what he's saying there is, if they found it to be reasonable, there is no rational person in my view that could say that that's part of parental discipline. If that happened, the jury finds that he's been proved beyond a reasonable doubt, again, I think it would be irrational conclusion, that's reasonable force as part of reasonable discipline. What is the judge doing there? In my opinion, the judge is substituting his view for that of the trier of fact. Respectfully, again, to Judge Kleeman, who's an excellent judge, I appear before him all the time, I think he confused his roles here. I think he was making a judgment on the quality of the evidence, and impinging on the jury's province. And again, I'm saying things which I'm sure you all know, but the reason we have the right to a jury trial is because sometimes politics or sometimes the sentiments of a trial judge may be such that the citizen wishes to avail himself of members of the community. The standard in one part of Illinois may be different from the standard in another part of Illinois. The right to have the trier of fact be the jury, be a group of our peers, means that those people will hear the facts. The judge instructs the jury as to a warranted instruction, and clearly here the instruction was warranted. We weren't talking about respectfully stabbing or knifing a child. If you ask me, could it have been unreasonable? I would have no problem, had the judge given the instruction, I would have no problem opining that the jury was correct in deciding, look, we got that instruction, and the word reasonable is in the instruction, we don't need the jury, don't find Mr. Hoskins' actions reasonable, and guilty he is. In fact, that jury instruction doesn't say you have to find him not guilty because this is parental discipline, does it? Absolutely not. It gives them the right to assess it as possibly parental discipline. Yes, exactly correct, which brings up another point. Concomitantly, at the same time that the judge refused to instruct the jury, I think in good faith, but I'm arguing it was an abuse of discretion, at the same time he also, in the jury instructions, struck the words without legal justification. So the only other thing I want, because of the question that you asked that I want to impress on this court, is that the burden in Illinois is once some evidence is presented, not enough evidence, but some evidence is presented warranting the jury instruction on an affirmative defense, it's the state's burden not only to prove the defendant guilty beyond a reasonable doubt, but to prove that the affirmative defense did not apply beyond a reasonable doubt. So what Judge Kleeman did in this particular case is A, he took away from the trier of fact their role, he subsumed their role, and then two, he alleviated from the state its burden of proving Mr. Hoskins guilty beyond a reasonable doubt. Again, respectfully, it was not within the purview of Judge Kleeman within these facts, under this indictment, and under the law of this state to refuse to instruct the jury. And finally, I would just argue that the, I think it's the Robbers case, specifically said that the instruction that was tendered in this particular case, in Hoskins, was a non-argumentative, reasonable instruction that allowed, as Your Honor noted, allowed the jury to make its own determination without lobbying in favor of the state or in favor of the defense. And that instruction was that a parent is legally justified in using reasonable force when necessary as part of reasonable discipline from a child. The jury could have found, you know, that force was not reasonable, and this was not reasonable discipline of a child, but the jury never got the choice and Mr. Hoskins was deprived of his due process rights because of it. So that's my argument on that issue. Right. Counsel, you'll have an opportunity for response if you choose to after Mr. Diamond finishes. Thank you. Mr. Diamond. May it please the Court. My name is Collin Diamond and I represent the people of DuPage County. On July 23rd, 2014, the defendant picked up a victim at the age of 13 named AF by the neck with both of his hands, and he held him up in the air for 15 seconds till AF couldn't breathe, till AF couldn't talk, till AF's face turned red, and then he threw him in his room. This was far after the fight between AF and KF was over. When you say far after, what do you mean? The fight after AF and KF had already been concluded. Because he stood or put his hand between them, correct? He put his hand between both of them. And then what happened at that point? AF struck the defendant's arm. And then the defendant put both of his hands around his neck and picked him up in the air. So you're not talking about an hour afterwards. You're talking about so far off is just a term you're using? Yes. Okay. That was domestic battery. That was not discipline. This was not defendant sending AF to bed without supper. This was not defendant taking away his Xbox. Even giving him spanking. And the court... Wasn't there evidence that that had been done before and it didn't really make any difference? Evidence of what? Evidence of other sorts of punishment that had not worked. Weren't there other issues? That he was uncontrolled? Yes. But in this case, this was not discipline. There was no evidence that this was discipline in this case. Who's making that decision, the jury or the judge? The judge. Why? This was a non-pattern instruction. And as a non-pattern instruction, the judge had the discretion to deny that instruction. And it's being tendered to the jury. But is that the reason he denied it? Because it was non-pattern? Or because he found there was no evidence of reasonableness? It wasn't a matter of reasonableness. It was a matter of there was no evidence to show that this was discipline. We didn't even cross the threshold of reasonableness. And if you look at his response to defense counsel's oral motion to reconsider on page 608, he says, that's not discipline. I cannot see how anyone, I cannot fathom how anyone would see that as discipline. There was no evidence that this was a disciplinary act. The fight was over. Defendant grabs AF around the neck with both of his hands. It was entirely corroborated. There was no dispute as to what happened. He grabbed him around the neck. And even after this had happened, he's still on the driveway. He's yelling at the police officers. He's under the influence of alcohol. This wasn't something, he wasn't even allowed to physically discipline the children. So, how do you reconcile the fact, as counsel mentioned, that the state decided here not to charge the defendant with choking, AF thought? In this case, AF had not passed out. There was hands around the neck. There was evidence that he had a red face, but he was not choked out. He was not passed out. There was evidence of marks on his neck. Mr. Diamond, in the passage that I read to Mr. Remond, although there is one sentence that says that, in my view, you could not say that that's part of parental discipline, what he uses, the judge uses several times, reasonable force is part of reasonable discipline of a child. He uses that again near the conclusion, reasonable discipline of a child, reasonable force. It sounds like the judge, and reasonable doubt, the judge is making not just a, this isn't parental discipline, but this is not reasonable parental discipline. And whose job was that in this case? Determine the reasonableness or to determine whether it was discipline? The reasonable parental discipline. Whose job was that? I would argue if it got to that stage, the reasonableness, I would argue the jury would make the determination of whether it was reasonable. But in this case, there was no evidence that it was discipline at all. All right, and so if there is no evidence that this was discipline, what authority are you standing on for the fact that this is not discipline? That this was, that this is not discipline, that the act is not discipline? Yes, what authority, what statutory common law authority are you relying on? That this was, here, may I have a few seconds? Yes. Relax, relax on the fact that this was domestic battery in effect. This was not discipline at all. This was, this was a defendant attacking AF. That was not a disciplinary act at all. Well, that's what you charged, not you personally, but that's what the state charged, domestic battery. But just because someone's charged with domestic battery doesn't mean they can't intercede a defense, does it? No, they're allowed to present a defense, but they have to raise sufficient evidence in support of that defense. And in this case, they did not do so. Does the other crimes evidence here bear on this in any way? Yes, it shows that there was no lack of mistake. It shows that there was intent, there was motive, there was prior hostility toward the victim, AF, in this case, by the defendant. Does that bear at all on whether or not this was discipline or a hostile act towards AF? It bears on the fact that whether or not this was a mistake or whether or not this was intentional or whether or not this was, in certain instances, it would possibly bear on the fact that it would be parental discipline if there was sufficient evidence to show that, but there was none in this case. This shows that this was an open, hostile act toward AF. Well, he's not arguing that it's a mistake, is he? I argued in the closing argument that it was not knowingly. So that would be, or that was not knowingly. So in that case, it would be a mistake. The other crimes evidence related to the mother of this child, how does that relate to actions toward the child? There, I think we can all take note of the fact that adults kind of fight differently than children fight, and adult to child, especially by size. So how does the argument that resulted in Mom having some physical contact from Mr. Hoskins relate to his physical contact with the minor? Well, part of the domestic battery statute is knowingly. This had happened within the year. This happened against Brett Schmitz, who was the mother of the child. This happened in August 4, 2013. And in that case, he was also involved in family drinking at that time, and he was drinking in this case as well. And there was one incident that set him off. In the Brett Schmitz case, it was her accusing him of being unfaithful. And in this case, AF had slapped his wrist away, and that caused him to set off. And in both cases, there's this unspeakable rage. In both cases, he goes immediately and chokes Brett Schmitz, and he also goes out and puts his hands around the necks of AF. But does his anger toward mother then translate toward anger toward the child? Is that the issue? It would translate to that this was something, this was propensity, that this had happened before and that this wasn't a mistake, that this wasn't just a once-in-a-lifetime thing that he had had to do. Well, unlike the Roberts case, Mr. Hoskins here admits that this was not a mistake. Yes. We know that. And he's not denying that this happened, whether it was right or wrong. He's saying that, I was attempting to control this child who is hard to control. I might, as a jury member, I might not find it reasonable, but why wasn't the jury entitled to hear that instruction to make up its own mind? Because there was no evidence that this was discipline in this case. That's why they were not allowed. Because they were not allowed to determine the reasonableness because there was no evidence that this was discipline. So it couldn't be reasonable parental discipline if there was no evidence that there was discipline in this case. If a child hits you, the parent, what would be reasonable discipline? I mean, I'm not a father myself. I know that. You've dealt with children, I'm sure. I would say in that case it grounded in taking away the X-Box, even in spanking in this case. But this act in and of itself was not discipline. Well, what is there about this act that makes you say that? I mean, given the fact, again, that he wasn't charged with choking him. I mean, I don't know that if you choke somebody, they have to pass out. But anyway, I mean, there is evidence that he couldn't breathe for a short period of time. Well, the act itself, I would say. And I would also say there was no evidence that this was a disciplinary act. Like, oh, I'm going to, you've done this this time, I'm going to punish you here. And also Brett Schmidt's testimony that he was allowed to physically discipline him. So if he's not allowed to physically discipline him, this couldn't be discipline. Because he was not entitled to, therefore he couldn't. That's the real reason? That is one of the reasons. I wouldn't say that's the only reason. So AF can beat up his sister. I think AF is a sister. No, KF, his older brother, is 15 years old. So he can go ahead and beat him up and whatever happens, happens. I would say that that was different. That was a separate action. They were fighting. He put his hands in between them. And then the action, which is truly what set him off, caused the defendant to go after AF is when he hid his hand away. That was different than the fight. The fight was far from over. So you can't say that was the disciplinary act there. No? Okay, if there's anything else you'd like to add, you still have time. I don't think we have any other questions right now. I would just respectfully request that you affirm the judgment of the lower court. Thank you. Mr. Raymonde, if you have anything, you have a few minutes in reply. I appreciate the opportunity. I'll be brief. You know, I respectfully, I think what the state is doing here is asking this court to substitute its judgment for what the jury should have decided. It's asking this court to accept what the state's appreciation of the evidence was and make that law as opposed to what the jury was entitled to decide in here. It's asking this court, I think in a sense, to make a per se rule regarding the facts in this particular case and say that because of the facts in this particular case, in this particular case or in cases like this, that the defendant is not entitled to have an instruction on reasonableness. There is some issue that the disciplinary issue where he was breaking up the fight was over and therefore there was nothing else to discipline. What's your position on that? Well, factually I disagree with that. I think where I might agree with the state would be whether the ultimate acts of Mr. Hoskins were reasonable or not, the ultimate acts. And again, with due respect to this court, it's not for this court to decide that. It would have been for the jury to decide that. It's not for the state or Mr. Diamond to decide that. Clearly this all occurred quickly and I disagree with the state's initial argument that there was some time lapse or that there was some intervening circumstance which separates the actions of Mr. Hoskins from the discipline. There was the evidence, again the record was replete with evidence that this young man was a little bit, I don't know how to put it, a little bit of a young ruffian, a problem child for whatever reason. Clearly Mr. Hoskins was in loco parentis and was the lone adult in the house at that time. The fact that his live-in girlfriend, the mother, Ms. Schmitz, had some sort of, had admonished him as to what he could or could not do, I respectfully suggest doesn't bind this court as to what the law in Illinois requires of a jury. And going specifically to your Honor's question, everything happened in sequence. The young man, the complaining witness, hit his brother with a racket, stepdad came out, told him to stop, young kid hit stepdad with his hands and stepdad grabbed the complaining witness by his neck, lifted him up in the air and threw him in his room. Now, clearly it's within the aura of a disciplinary act. The question is was that disciplinary act, was that ultimate disciplinary act reasonable or not? If you ask my opinion, I'm going to be candid with you. I wouldn't find that reasonable if I acted that way. But it's not my decision to make for Mr. Hoskins. Respectfully it's not this court's decision to make, it was the prior effect. That's the jury, that's the beauty of our system, that's why we have such a great criminal justice system is that the defendant can look and say, you know, I think this judge, he's going to be a fair trial factor. No, I'm going to avail myself of the right in the Constitution to have 12 people decide that. And I'll just end, because I tend to talk too much, but again, citing People v. Green, it's right in there, page 6. Both the reasonableness of and the necessity for the punishment is to be determined by the binder of fact under the circumstances of each case. And that's Green citing People v. Ball at 15 Allot 3rd, 143. It's a 1973 case. And then at the end of the case, in People v. Green, there's an admonishment. I think it's probably in Justice Burke's admonishment. Judges must take care not to create legal standard from our personal notions of how best to discipline a child. That is best left to the trial of fact under the unique factual circumstances of the case. I appreciate the court hearing my argument. Thank you, counsel, for your argument. We'll take the matter under advisement. We are going to stand in recess to prepare for our next argument. And again, thank you for waiting for us. We apologize for the delay. Thank you.